Filed 11/29/22 In re C.R. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| In re C.R. et al., Persons Coming Under the Juvenile Court Law. | B317118 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>V.R.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 17CCJP02383 |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge. Dismissed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, Peter A. Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

V.R. (mother) challenges the juvenile court's October 2021 orders[1] temporarily suspending her visitation with her two children, C.R. and A.R. In so doing, mother acknowledges the court reinstated her visits in February 2022, while this appeal was pending. Nevertheless, she contends the February 2022 orders have not rendered this appeal moot because: (1) we can grant her effective relief by directing the juvenile court to order make-up visits for the period in which her visits were suspended; and (2) if allowed to stand, the October 2021 orders will prejudice her by infecting subsequent proceedings in this case.

As discussed below, we reject mother's arguments and conclude this appeal is moot. Accordingly, we dismiss.

## BACKGROUND

Mother and F.V.[2] (father) are the parents of C.R. and A.R. Mother also has four adult children, who reside in Washington. When this case arose in December 2017, C.R. was seven years old and A.R. was four years old. They lived in a house with mother and a few other adults, including their godmother. The parents had not been in contact for several years. Mother reported father was not involved in the children's lives.

---

1    Throughout the underlying case, the juvenile court entered separate minute orders setting forth its rulings for each child.

2    The juvenile court found F.V. to be the alleged father of both children. He is not a party to this appeal.

In late January 2018, the juvenile court sustained an amended Welfare and Institutions Code[3] section 300 petition filed by the Department of Children and Family Services (Department). In so doing, it found true the allegations that the children were at risk of serious physical harm due to: (1) mother's history of criminal convictions and her failure to make an appropriate plan for their care while she was incarcerated; and (2) father's unresolved criminal history. The juvenile court then declared the children dependents of the court, removed them from both parents, and granted mother reunification services and monitored visitation.

At the six-month review hearing held in October 2018, the juvenile court found mother in partial compliance with her case plan and continued her reunification services. At the twelve-month review hearing held in February 2019, however, the court terminated her reunification services and set a permanency planning hearing for June 2019.

In March 2019, V.M., one of the children's adult siblings, expressed interest in having the children placed in her care with a permanent plan of legal guardianship. Her home was approved for placement in May 2019. Mother agreed to the children's placement with V.M. under a permanent plan of legal guardianship.

Consequently, at a hearing held in late June 2019, the juvenile court ordered the Department to transfer the children from their foster home to V.M.'s home in Washington. The juvenile court also found legal guardianship to be the appropriate goal for the children and ordered it as their permanent plan. Per

---

3     All undesignated statutory references are to the Welfare and Institutions Code.

the Department's request, the juvenile court continued the permanency planning hearing to December 2019.

In early October 2019, the children began residing with V.M. Later, mother relocated to Washington, where she stayed with one of her other adult children.

Due to various reasons, including issues with notice and concerns relating to the COVID-19 pandemic, the juvenile court continued the permanency planning review hearing several times.

A brief hearing was held on October 26, 2021. That morning, mother had filed a section 388 petition to modify the order terminating her reunification services. She sought an order placing the children in her care. Alternatively, she asked the juvenile court to place the children with A.G., one of her other adult children, and reinstate her reunification services with unmonitored or overnight visitation. In support of her petition, mother asserted circumstances had changed to justify her requested modifications because, among other things, V.M. was "refusing to allow mother any visitation with the children, and even attempted to obtain a frivolous restraining order against mother, which has since been dismissed." Attached to mother's section 388 petition was an October 21, 2021 order of the Superior Court of Washington for Yakima County, denying V.M.'s request for a full restraining order against mother and A.G., and lifting all temporary restraining orders previously entered.

At the outset of the October 26 hearing, the juvenile court noted the Department had requested to continue the permanency planning hearing based on information provided by the children's counsel. The court did not state or otherwise clarify what information was given. Nonetheless, the court stated it would

4

continue the matter to December 21, 2021 to "address[ ] some of the things that are going on."

At that point, mother's counsel noted he had filed a section 388 petition for mother. The juvenile court had yet to read her petition at the time of the hearing. Then, apparently referencing the information provided by the children's counsel, mother's counsel stated: "What I understand, there was a restraining order that was attempted by the caregiver in Washington, supposedly barring [mother] from visiting the children. [¶] I don't think it's legally valid, since this court has jurisdiction over the children. [¶] I would ask if they do enforce the visitation order, my client is not being able to [sic] see her children." The juvenile court responded: "Well based on what [the children's counsel] is telling me, it appears there are some issues. [¶] So, at this point, the court is going to follow the lead of the criminal restraining order and . . . mother's visits, at this time, are not going to take place until some different orders are made." Mother's counsel then stated: "There is not really concrete evidence before the court. [¶] [Mother] contests the representations made." Over her objection, the court ordered mother to stay away from the children.

Mother timely appealed from the October 26, 2021 orders. However, at a hearing held on February 4, 2022, while this appeal was pending, the juvenile court lifted its orders suspending mother's visits, finding "no detriment exists if mother visits with a monitor in place."

## DISCUSSION

"An appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief. [Citations.] "'An issue is

5

not moot if the purported error infects the outcome of subsequent proceedings.""'" (*In re E.T.* (2013) 217 Cal.App.4th 426, 436.) "The question of mootness in a dependency case should be decided on a case-by-case basis[.]" (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404-405.)

As noted above, mother contends the reinstatement of her visits in February 2022 has not rendered this appeal moot for two primary[4] reasons. First, she asserts this appeal is not moot because we can provide her with effective relief by ordering the juvenile court to grant make-up visits for the three-month period in which they were suspended. Second, she argues that, if allowed to stand, the order suspending her visits will infect subsequent proceedings by making it "more difficult for her to succeed in her section 388 petition[ ]" and "ma[king] it impossible for [her] to establish the first prong of the beneficial relationship exception." As discussed below, we are not persuaded by either contention.

---

4    Mother also asserts "[a] finding of mootness would undermine fundamental due process principles applicable to dependency proceedings." She does not, however, clearly explain how those principles are implicated on the facts of this case. We therefore conclude her conclusory due process argument has been forfeited and decline to entertain it. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) In any event, we further conclude dismissal of this appeal does not give rise to any due process concerns because, as discussed below: (1) mother has not shown she cannot ask the juvenile court for the relief sought before this court (i.e., an order granting her make-up visits for the period in which they were suspended) following the dismissal of her appeal; and (2) mother has not shown she will be prejudiced by the October 2021 orders in subsequent proceedings.

With respect to her first argument, the record reflects mother has not, at any point, asked the juvenile court for an order directing the Department to provide her make-up visits for those she missed due to the October 2021 orders. Accordingly, we conclude she has forfeited her request for such relief on appeal and decline to consider it. (See *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1127 ["[F]orfeiture generally applies . . . when a party failed to ask in the juvenile court for relief being sought on appeal"].) In so doing, we note mother has not presented—and we cannot discern—any reason why she cannot ask the juvenile court to enter her desired order now or in the future.

With respect to her second argument, we conclude mother has not shown the order temporarily suspending her visits will infect the outcome of subsequent proceedings in this case.

To succeed on her section 388 petition, mother must show, by a preponderance of the evidence: "(1) that there is new evidence or a change of circumstances and (2) that the proposed modification would be in the best interests of the child[ren]." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615, italics omitted.) Although she asserts the juvenile court's suspension of her visits "rendered it more difficult for her to succeed in her [section] 388 petition[,]" she does not explain how its orders have harmed or will harm her ability to satisfy the elements noted above.

Mother's contention the order suspending her visitation will "ma[k]e it impossible for [her] to establish the first prong of the beneficial relationship exception[ ]" is speculative. That exception, codified in section 366.26, subdivision (c)(1)(B)(i),[5] is an

_____

5      Per section 366.26, subdivision (c)(1)(B)(i), a permanent plan other than adoption may be selected if "[t]he parents have

"exception[ ] to the general rule that the [juvenile] court must choose adoption where possible[.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 53, italics omitted.) Throughout the underlying proceedings, however, the Department has consistently recommended the permanent plan of legal guardianship, rather than adoption accompanied by termination of mother's parental rights. In addition, the juvenile court previously found legal guardianship to be an appropriate goal for the children, and has ordered it as their permanent plan. Although the Department changed its recommendation from legal guardianship to adoption in November 2021, the record before us reflects the juvenile court has yet to adopt that recommendation. In addition, as noted above, mother has filed a section 388 petition seeking to have the children returned to her care or, alternatively, to have her reunification services reinstated. So far as we can tell, her petition is still pending. Therefore, whether mother will have to establish the beneficial relationship exception applies at all remains uncertain.

In any event, mother's contention is also incorrect. In evaluating the first prong of the three-part test governing the beneficial relationship exception, courts consider "whether 'parents visit consistently,' *taking into account 'the extent permitted by court orders.'*" (*In re Caden C.* (2021) 11 Cal.5th 614, 632, italics added.) Thus, we are not convinced mother's three-month lapse in visitation resulting directly from a court order will foreclose her from establishing she "maintained regular visitation and contact with [her] child[ren]" as required to show the exception's applicability. (§ 366.26, subd. (c)(1)(B)(i).)

---

maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

In sum, for the reasons discussed above, we conclude this appeal has become moot due to the juvenile court's reinstatement of mother's visitation. Accordingly, we need not address the merits of her challenge to the prior orders suspending her visits.

## DISPOSITION

The appeal is dismissed as moot.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.

9